Thank you, Your Honor. May it please the court, Plaintiff Samantha Long was a clerk of the Town Justice Court. She was custodian of the records of that court. She was asked to provide the Commission on Judicial Conduct with some records of the court. She did. The Commission told her its investigation was confidential. She refused to discuss it with Judge Byrne. She was then terminated from employment. Since we're starting with the facts, I had a couple of factual questions that may go outside the record because I think the record is just the complaint. Correct. But one thing that the complaint doesn't say is what are these files? Are these public files that were available to anyone like our court files in the clerk's office? I believe that would be the case, Your Honor. And then what happened to the files? It says she provided them. That could mean one of two things. Like anybody else, you come and you ask to consult the files, you look at the files, you take notes, maybe you make a copy of something. Or it could mean that she let the investigator walk away with the files. There's nothing that tells us. This is, of course, one of the difficulties with having a dismissal at such an early stage of the case, is that those facts could be fleshed out. I do not know the answer to that question. At any rate, it's not in the complaint, so for purposes of our review, we just don't know the answer to that. It's also, this is a legal question of a sort, it's alleged in the complaint that she turned these records over as she was obliged by law to do. What is the legal basis for the idea that she was obliged? It doesn't say she was subpoenaed by the commission, or even whether the commission has subpoena power. I presume they do. But it was just, the guy walks in the office, and she's obliged by law to cooperate? Well, obviously, they presume. She's obliged by law because she's the custodian of records, and anybody from the public who wants to see them can see them. I didn't get that. In page six of our principal brief, Your Honor, there's a long description by the New York State Court of Appeals of the powers of the Commission on Judicial Conduct. She could have been subpoenaed. She could have refused to provide the records and say, I'm waiting for a subpoena. But presumably, she felt that the Commission on Judicial Conduct was a pretty That's sort of what your complaint suggests. But in other words, it's not, it's another thing that is not explicit in the complaint and is not really in the record as to whether there was some legal obligation on her, and if so, what its source would be to provide it. She believed she was obliged, is what it says. That is correct. And it would be the same, for example, if the Commission went to visit an attorney in his office as a witness to something a judge had allegedly done, the lawyer would know that the Commission has certain powers and could say, nope, I'm not saying a word unless you subpoena me. But then they could be subpoenaed. It's the same duty. I get it. I understand the point. Sorry to interrupt you. No, that's not at all. Can I ask a, sorry, now that we've broken your rhythm, let's keep breaking it. I'm really struggling with how somebody asks for a file, you give it to them. In what sense is that speech at all? The whole premise that this is an act of sort of expressive something that's being penalized, I'm struggling with. Well, it's, public employees acquire information in their job that can be of interest to an independent body investigating governmental corruption. The details of what the judge was allegedly doing wrong could be in those files, and she was called to testify before the Commission after the initiation of this lawsuit. So she presumably testified as to what those records meant. And that, I can see how that might be speech, but this is the contents of the file, here you go, doesn't even require her to know what the file says. Actually, she had some understanding of what they were investigating. She knew that, and it is in our brief, she knew that, although not detailed in the complaint, it is also, she knew that there was an investigation of this judge for a number of things, including fixing tickets and various things of that nature. And that makes it speech? Well, it's also, the First Amendment protects nonverbal acts that are speech, and this was the beginning of the Commission's activity with respect to the Court, so there was follow-up later on, but I have to point out that we brought this case at a time before the Commission finally took testimony, and we were trying to save this lady's employment. We did not wait to see how this thing would play out, and it seems that providing information of any kind to an independent body investigating governmental corruption, there is not a single case anyone who has cited that such activity is not protected. Yes, I thought you were going to say that this is testimony like any other. In other words, she wasn't testifying because she was only talking to the investigator, but if she had been subpoenaed to go before the Commission and testify, like any other document custodian, she would provide information that is a link in whatever the Commission was trying to find out. So even if it's only, these are the files you're looking for, and presumably they are the genuine court files that haven't been tampered with and they're kept in the ordinary course of business, that is the representation that she's making. It may not be dramatic testimony, like I saw the judge tell some guy that she would fix his tickets, but it is a link in a chain of evidence. Exactly, Your Honor. It is what witnesses do. And in addition, I believe that she did ultimately testify that the judge actually ripped up tickets. If I could just switch over to the conversation with Justice Byrne about the investigation. How is that speech? Wasn't it just a declining to answer question? She told the judge that the Commission had said to her that she was not to discuss their investigation with anybody. Justice Byrne, if we go back to Garcetti v. Ceballos, the whole purpose of Garcetti v. Ceballos is to protect supervisors' right to supervise public employees with respect to their everyday job duties, and every time you give an opinion to your supervisor, you can't say I'm immune from discipline under the First Amendment. So let's say that the document production was something that's in the ordinary course of her official responsibility. So assume that for a second for purposes of this question. Then would a question about something that is an official responsibility not also then be an official responsibility? I mean, it seems odd to sort of segregate. It is not her official responsibility to refuse to discuss something with her employer. She is acting pursuant to instructions from an independent body investigating corruption in government. I thought the complaint alleged not that she said I can't answer this, although she did talk about the fact that she was instructed to keep this confidential. But the question was who ratted me out? And she did answer that question. She said, I don't know. I wonder, as distinct from the communication with the external body that stands in for the public, that has the responsibility to the public to track down corruption, isn't this just a typical everyday conversation with your boss? She's in charge of the records. The boss comes in and says, what's going on with the records? Anybody come by? What did they say? What was it about? Now, putting aside what the judge's motives may have been in asking these particular questions and putting aside what right she might have to be shielded by the commission's instruction, isn't this just an everyday office conversation? Hardly, Your Honor, because it is not an employee's duty to refuse to discuss matters with your supervisor. It went beyond the mere question, do you know? She did say that, I don't know, you're right. But she also said, I'm not able to discuss this matter with you because that's what the commission instructed me. So what? That too could be part of an everyday conversation. If somebody works for me and I ask them questions about what they're doing and what has happened to them in their office and how they've done things and what am I supposed to make of all of this, that seems to me to be much closer to the Garcetti kind of situation. It may be, in Garcetti, that the district attorney just didn't like the legal advice he was given and wanted to be rid of anybody who challenged his viewpoint or something. But it is the boss's right to ask these questions, get information, and I suppose in effect say, I think this is incompetent, you're fired. So why isn't this more like that than it's like even her interactions with the investigators? Unlike Garcetti, it's not a discussion of her ability to perform her job. The judge was trying to get into what the commission was doing and she was responding that I don't have the ability to tell you that. And she was protecting the confidentiality of the commission's role. For example, if Garcetti was, Ceballos rather, were sitting in his office and got a call from some independent body of Los Angeles investigating police corruption and they had a conversation. And then his superior said, what was that all about? And he said, I was told I cannot discuss that with you. That is a completely different situation than an average everyday workplace conversation. The point of Garcetti versus Ceballos is that employees are subject to discipline for disobeying their superiors if it's what they're employed to do. Here she was not employed to be providing information to the commission on judicial conduct or following the commission's rules regarding confidentiality. That's a very specific way of describing what she's employed to. And I might be making assumptions just based on being around courts for some amount of time. But typically if you describe somebody as the clerk of a court, their duties are to be the ones that respond to requests for the files. And we don't sort of slice and dice it, request from this person versus a request from that person. They're the guardians of the files, they're the keepers of the files. If somebody says, can I have the file? Provided it's not unlawful to do so, they give them the file. Well I think the real concern here is that if we say, if you as a court clerk give files to a commission investigating judicial corruption as you're obligated to do under law, that you can be terminated from employment. I think that would be huge. Let me ask you. That is what happened. That's the fact. I understand that. The question here, though, is whether that's a First Amendment violation. That's the theory you've brought. Do they not have wrongful termination on the basis of public policy grounds under New York Common Law? Absolutely not. There is no such public policy exception to actual employment. There may be, there is section 740 of the labor law, which is a whistleblower type of statute. But we feel that this was an act of, as Judge Lynch pointed out, that it is an act of exactly what a witness would do, and the witness just happened to be a court clerk. If the witness had been an attorney and was asked the question, well, what did this judge do in chambers? It's the same thing. It's just that the attorney is privy to one sort of information and the court clerk privy to another. Thank you, counsel. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. My name is Steven Grodin. I'm with the Law Office of Murphy Burns Grodin. I represent Appellee Judge Jessica Byrne in this appeal. The trial court, Judge D'Agostino, correctly held that the appellant did not allege a cognizant claim for a violation of the right to freedom of speech under the First Amendment in her amended complaint. The court properly applied the standards set by this court in Ross v. Breslin and in analyzing the facts as it applied to the First Amendment. As Your Honors have aptly pointed out today, the speech at issue here is providing four court files to the New York State Commission on Judicial Conduct in July of 2023. It's undisputed that the appellant's role with the town court was clerical in nature, as appellant's counsel has pointed out. She called her the custodian of the records. At the time this speech was made, which is the relevant thing here, she had no idea what was inside of those files. But why does that matter? Suppose she was subpoenaed before the commission. So she clearly had a legal obligation to go and testify. And it was a subpoenaed and it said, bring these files. So she takes the files, she comes before the commission, she's asked, what are those things, have you brought the things we asked for? Yes, I have. And are those files of the commission, of the court? Yes, they are. You keep them, you're the custodian, you keep them in the ordinary correspondence? Yes, I do. She hands them over to the commission, there's no further examination, she leaves. She could be fired for doing that? I think under the case law, that's part of her official responsibility, responding to a subpoena. Really? So she could be fired for providing truthful testimony. How does that fit with Jackler? Well, Your Honor, I would argue that it's not testimony. Of course it's testimony. I just said, my hypothetical. Sure. Then you can tell me why it's different. Sure. My hypothetical is, she is called, takes an oath, is asked questions by a body that's authorized to ask the questions. Those questions are necessary in order for, if the rules of evidence apply, it would certainly be necessary, to lay the foundation for the commissions being able to take account of those records and what is in them. That's not testimony? Well, she's not speaking on a matter of public concern, because she doesn't have... Again, she is subpoenaed before a state commission on judicial integrity, which has the vital role of investigating potential corruption in the judiciary, and she testifies before that commission. That is not a matter of public concern that she is speaking about? Well, if she's there in her role as a court clerk... What other role would she be? That's the only way she knows anything. Excuse me. If she had seen the judge in the courtroom take certain actions, that, too, would be something that she had seen in her capacity as a court clerk. Correct. So if she went before the commission under subpoena and was asked, okay, these are your records, fine. We also have some other questions. Did you ever see the judge tear up parking tickets? Oh, yes, I did. That would still be, no protection for that. Well, that may be a different issue. Oh, why? Because it's more important evidence? Well, no, because she's giving testimony, she's speaking out on something that she witnessed occur. In this case, she simply... Well, if she witnessed occur, excuse me, it's just a question of the importance of the testimony. It's a little tiny link in some chain of proving corruption. It's not dramatic testimony. You know, I saw the judge murder someone in the courtroom. Sure. It's a tiny little thing, but it's a piece of what the commission needs to find out. She's the one who happens to know it. Why is it First Amendment protected, at least potentially, according to you, if she says, I actually saw in the courtroom the judge do A, B, and C acts, which at the time I didn't realize were corrupt, but now that I've put two and two together, I know what this was. That information would be protected by the First Amendment, but the more mundane. These are the legitimate, truthful files. I didn't make them up. I didn't forge them. These are the true files of these four cases. Why is the one protected and the other not? Well, I think the key here is the public concern element that we see in the cases of Ross, Weintraub, Jackler. They're people who are speaking out on something of a public nature, of public concern. What could be more public and more of public concern than an official investigation before an official body? And I realize there is a difference here between an actual subpoena and testimony in public. But although it wouldn't have to be in public. I assume it's possible that the commission might have some confidential proceedings where they have hearings that are not open to the public. But the commission is the public, right? They represent the people of the state of New York, and they're undertaking an official investigation. How can that not be a matter of public concern? Your Honor, respectfully, the scenario that we have before us is her simply handing these files over. And in that scenario, there's no – she has no idea what's in those files and what the public – But so what? I mean, she is saying something that is about – that is of important interest to the commission. She knows that. She knows that they want these files, and they are the commission of public integrity. Now, she's not actually – this is the way investigations work, as I'm sure you know. When a police officer goes and asks somebody, will you cooperate with us without a subpoena? Will you give us a file? They don't ask the business record questions in that meeting. That may happen later as an attorney prepares the witness to testify in court. But that's what is assumed when they ask for the files, that these are the files. And that's what she is saying when she hands that over. Well, what we're working with here is the four corners of the complaint – of the amended complaint, which there's been a lot of talk today about things that are outside of the complaint. And this is what we're dealing with is the amended complaint. And one of the points we made in the brief, too, was Plaintiff's counsel's reliance on the stipulation that Judge Byrne – and that was specifically not considered by Judge Dixon. No one has spoken about that yet. The fact that the judge was corrupt is not before us, is not part of this case. And it doesn't matter because it would be the same if the judge was ultimately exonerated. It's still an investigation by a public commission that is asking for information. Now, I think Jackler stands for the proposition that, for example, a police officer, as it happened to be in that case, has a right not to lie, has a right to stand silent when someone asks him to revoke testimony. But the reason Jackler had that right was because that's a corollary of his right in the first place to give truthful information. Right. But in Jackler, the court was very clear to say that in those actions he was acting like a citizen. In this case, we're clearly in this work environment where she's the – Why is he acting like a citizen? I mean, he's not writing a letter to the editor, right? He's responding to other investigators. He's reporting information. The point is it's – it was not – he was not responding to his boss as in Garcetti in a situation where the public employer has to have the right to say, I see what you say. I see that this is your opinion, but that is incompetent. That is not good lawyering. I don't want you working for me anymore. Again, one thing I'm surprised I didn't hear from the defense is it's not – there's this vague allegation that she was obliged by law to comply with the request of the investigator, which is not a subpoena. And it's not said – other than that she handed him the files, it's not said what happens next. It seems to me there would be some legitimate issue if – a potential disciplinary issue. I mean I don't know that I would want our court clerks to have some police officer come into the district court and get case files and just take them away, perhaps to be altered or destroyed to cover up evidence of corruption. But there's no – there has not been an argument that that's what the concern is here. That this is – that she may have done something that was legitimately disciplinable. But that's not an argument that you've made. Well, and that might be an argument for summary judgment, Your Honor. Exactly. So my concerns about the case all seem to be things that hinge on further development of a factual record. But what we're working with is the four corners of the amended complaint, and that's not alleged anywhere in the amended complaint. Of course not. Because if it were, it would help you perhaps. That's what I'm trying to find out about. But that we won't find out about until and unless there's a discovery. It's not on the record. But just to conclude, I see my time has expired. I'll let Kohopelli's counsel hand off. But just – the key here I think, and I just want to highlight is, but for her position as a court clerk, this speech would not have occurred. Thank you, Your Honors. I appreciate it. Mr. Redding. Good morning, Your Honors. Earl Redding, Romer, Wallins, Goldman, O for the Town of Lebanon. I'll just address the bench and the questions that have been coming up. And I'll point to what this court determined in Ross v. Breslin, that there's no bright-line rule. And so the hypotheticals that have been countered by both co-counsel and plaintiff's counsel, I think go to what Ross v. Breslin was talking about in looking at what is within the complaint and was the individual speaking as a citizen or were they speaking in their employment duties. I think it's clear based upon what we've heard and what's in the facts in the complaint is that she was the court clerk. She was asked for cases and she provided them. But for her responsibilities as a court clerk, she wouldn't be here. And when I say here, the one thing I also want to point out is that we're only looking at when we talk about the elements. I think this goes to your last line of reasoning here. We're only looking at the speech first. We're not looking at the causation. So when we attacked the motion to dismiss or when we attacked the complaint through the motion to dismiss, that's all we were stating is the speech, not the causation. So when we talk about, okay, well, her providing files, which in my mind too is like, well, you just provide them to anybody who comes in with a badge without kind of checking with your judge first or even the supervisor if they're asking for something about, if they're investigating the judge, you're not going to check first. Obviously, that comes into play. But that's not what we were dealing with here because what we're dealing with is, as was pled, is that her speech was part and parcel of her duties as an employee. Also, when we go through the factors that Ross talked about and that are in Weintraub as well, there's nothing, and we both pointed this out in our briefs, there's nothing else. So a lot of the questions you're asking, again, I think go to that bright line rule, but there's nothing else here that was pled. But aren't all of the cases where we stress so heavily that the speech was part of the person's job description, cases in which the speech was to a superior or a colleague as part of the job as opposed to, I mean, you can say, isn't it every public employee's part of their job to respond to official inquiries from public bodies? I mean, wouldn't it really be, I mean, if she were subpoenaed by the State Commission on Judicial Integrity to testify and she said, no, I'm not going to go, couldn't she clearly be fired for that because it would be – she would be breaching her duty to give testimony? But this is – that's a very different scenario than this one, I should think. It's always going to be part of somebody's job description as a public employee that they can be called to testify about other people's behavior. And if they are, they have an obligation to do it. And the notion that then when they go and do it and testify as far as is alleged truthfully about whatever it is, whether it's big testimony or little testimony, how can they not be protected by the First Amendment? How can that not be speech about matters of public concern? I think the cases you've had before you, Jackler and others, those were cases, if I recall correctly, in which the individual was speaking up to a supervisor about something that they felt was wrong within their employment. And that, if I recall correctly in Jackler, that was also something that a citizen themselves could do to the supervisor. Here, all we have and all that's been alleged is that she was asked for files. She provided the files. That is the speech, not what was in the files, not why she was being asked for the files, not that, okay, maybe she's being asked because of an investigation into the judge, but not as to whether or not the judge had any impropriety. There's not – all she's being asked to do is as a court clerk provide the files. That's the speech. What about the conversation part of it, the refusal to answer more questions from Justice Byrne about what she did or who was behind the investigation, and wasn't that part of the speech as well? That is the second part that's been alleged. And I think that that flows directly from the fact that she was asked for these files. But how is that part of her job responsibilities? I mean, just because her boss is the one asking, it seems more akin to the private citizen context where somebody is asking, what do you know about this investigation about me? Well, the judge is asking about the files that were provided, and that's part and parcel of the duties. She wouldn't have been in that position had she not provided the files. And that is part of, again, her employment duties. And that's all that's really been alleged here. So the files, I understand how that's part of the employment duties. I understand that argument. But how is answering questions about who's investigating her or saying when she's saying I'm not supposed to talk about this, how is that part of her job responsibilities? That seems personal to me where the justice is asking her who's snooping around. Well, she's only being asked because she's the court clerk. Again, it's a supervisor, the judge, asking a subordinate. She happens to know it because she's the court clerk, I suppose.  There would be no other reason that the judge would be asking her, but for the fact that she was the court clerk that provided those records over. But that doesn't bring it within the ambit of her responsibilities as the court clerk. I'm sorry, Your Honor? But that doesn't bring it within the scope of her job responsibilities, just because she happens to know about it because of her job. No, what it brings in part of her responsibilities is that she was the one who provided it. She was the court clerk that was asked for the files and provided those files over. That's the point, is that she wouldn't have been in that position but for the fact that she's the court clerk. The way that I think about it, it could be any one of us that were there. You substitute the name Samantha Long for Earl Redding or anyone else. I'm just doing my job, being asked for files, and I provided them. The judge is then coming to me in my office, in the courtroom setting, during my work hours, and asking me— Any conversation or questioning about something that was done in your capacity as an official becomes part of your official responsibility? I wouldn't say that. And again, I'd point back to where I think the court was wise in at least saying that there's no bright-line rule here. I thought that was the point you were making, though. You were saying that because it's a question about what you provided, then it's part of her job responsibilities. That just doesn't follow for me logically. I'm not sure I understand. What I'm saying is that, yes, because she was the court clerk and because she provided the files, and the judge, who is her supervisor, comes in and says, who is asking for the files and what is the complaint about? And she says, I provided the files and I'm not supposed to talk about it. That is only because she was the court clerk. If there was more, and this is what I'm saying, is that if there were more, if she had maybe gone to the commissioner herself or maybe talked about it outside of the courtroom about, hey, the judge is being investigated on this, that may be more to get above what the case law says, that she's only speaking as an employee and not a citizen. I don't understand. Suppose the investigator said, I'd like to see these files. She brings the files. The investigator says, did the judge ever ask you to pull something out of these files and not include it? And she gave an answer to that. Wouldn't that fall under your test too? There's no reason to ask her other than the fact that she's the custodian of the files. She's the clerk of the court. It's part of her job to maintain the files. Are you saying, well, it's not part of her job to answer questions about the files? No, I'm not saying it's not part of her job to answer questions. But if it is part of her job, then you're saying that in the hypothetical like mine, that too would not be protected by the First Amendment. If she says, yes, I'm sorry to say, I have been asked to remove certain documents from these files. That could very well go to the question of whether or not she was speaking as a citizen rather than as an employee. Yes, maybe she saw these things. And again, this goes to what Jack and others have said. Yes, I've seen these things happen. But now I'm bringing them forward to you and speaking about it. I think that's a lot different than what we have here in the complaint, which is she's just being asked for files and she's provided. Thank you, counsel. Thank you. We'll hear rebuttal. Thank you, Your Honors. Presumably, there are many, many more facts that could be developed. I think the key question here is whether plaintiff has plausibly alleged a First Amendment claim. The other cases, like Ross, for example, involve summary judgment. And summary judgment in Ross was obtained because the plaintiff admitted that it was part of her job duties to look at payroll irregularities, which was at issue in that case. And she was only reporting to her employer, not an independent body investigating corruption. Also, in response to counsel who just argued, many cases of this court have repeatedly held that the mere fact that a public employee obtains information in the course of their job duties does not make the speech unprotected. Presumably, she had to explain the records to the Commission on Judicial Conduct. Presumably, if that is an important part of your claim, you should plead that. There's no pleading that says not only did she provide it, but in providing it, she explained something about the contents of it. That sounds more like speech to me. Plausible is the standard here. A complaint is not supposed to be an affidavit in response to summary judgment that anticipates every argument that could possibly be made. But it does have to establish plausibly your prima facie case. And I'm just trying to figure out her job as the clerk. She manages the folders, the files. She's asked for the files. The pleading says, pursuant to law, she provided them. There's no allegation that she knew the contents of them. There's no allegation that she added any expressive content from her own knowledge, even as to the validity of the accuracy of the files. It's not the scenario where she's testifying in front of the Commission and authenticating them. How does that get you past the pleading stage? Because we say the act of providing the records was the act of a witness communicating to an independent body. And what was the substance of her communication? These are the files? Well, these are the files. And they had to have some conversation with her about the particular files that were relevant to the case. But be that as it may, she could have been subpoenaed. She could have been subpoenaed to this Commission just to provide the files and nothing more. It's still, in our view, an act of communication with the Commission. No, there is Fifth Amendment law. So there's Fifth Amendment law, the act of production doctrine, right? You may or may not be familiar with that. I don't know if you're familiar with it. No, I'm familiar with the act of production doctrine. You know, you may have a privilege not to produce documents when the act of production might itself incriminate you because of the implicit communication that you're making that these are my records, which is what you asked me for. There is an expressive aspect, at least in that context. And I, of course, and nonverbal acts are protected. Right, you can burn your draft card and so on. You're not saying that those were words. Well, it's obviously not as extreme as that. Of course it's not as extreme because this is not like testimony that I saw the judge commit a crime. It's not, you know, front page New York Times information that these are the files that the Commission was looking for. But these are the files the Commission was looking for, and she provided them, and she was punished for doing it. That's your case so far, right? It is, and it could develop into a lot more. Well, it could develop in a lot of ways, but again, I'm sympathetic to the question. Some of these things could have been pled. It's not like you need discovery to find out things like what conversation did she have, if any, with the investigator about the files. You don't need to depose the judge or the town supervisor to get information like that. You don't need to depose those people to find out whether she took court files and just gave them to somebody to walk away with them or whether she produced them the way she would produce them to anybody else. There's a lot of information that she has. Now, maybe your point, I think, is I didn't have to plead all those things because I think I've pled enough. But I take it, when this was dismissed, did you say anything about the possibility of amending the complaint? So the judge did give us that possibility before the motion was decided. Right, but after the motion? No, that had seemed to have been out of bounds by that point. And also, I don't think that, from our standpoint, that what the district court relied on was the Ross case. And we felt, in Ross, it was not providing information to an independent body. And in Ross, the plaintiff had made certain admissions which caused the dismissal of her case on summary judgment. So we did not really see, I still don't see Ross. So your argument is that the complaint is plausible as it stands? Yes, thank you very much, Your Honors. Thank you, counsel. Thank you all. We'll take the case under advisement. The next argument will be in case number 242119, United States v. Coonan. Ms. Lipson, are you ready? Good morning. This case is before you because of age discrimination. Instead of being 78 years old, if Mr. Coonan were my age, 36, if he had been born in 1988 as I was, the district court would not have said that the First Step Act doesn't apply to him. The question isn't what his age was. The question is what the age of his crimes was, right?